UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

HERBERT TISHER,

        Plaintiff,

v.                      Case No. 4:16-CV-00846 KGB

WRIGHT MEDICAL GROUP, INC. and
WRIGHT MEDICAL TECHNOLOGY, INC.,

        Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
WRIGHT MEDICAL GROUP, INC.'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Plaintiff Herbert Tisher, by and through his attorney George E. McLaughlin, for his

response in opposition to dismiss defendant Wright Medical Group, Inc. states as follows:

**FACTS and EVIDENCE SUPPORTING JURISDICTION**

Defendant Wright Medical Group, Inc., is a Delaware Corporation with its principal

place of business, located at 1023 Cherry Road, Memphis, Tennessee, 38117.  (Doc. 6-

1, ¶ 3)  The first reason Wright Medical Group, Inc., is and should be subject to the

jurisdiction of this court is because of the role and activities it had in the design and

development of the Wright Medical Profemur hip system, the medical device which is the

subject of this civil action.  [Complaint, Doc. 1, ¶s 46-60]

However, plaintiff also contends that Wright Medical Group, Inc., is subject to the

personal jurisdiction of the courts in Arkansas because Wright Medical Technology, Inc.,

is merely the alter ego of Wright Medical Group, Inc.  As such, Wright Medical Technology

was acting on behalf of Wright Medical Group in Arkansas.

In the Affidavit of Amy Reeves, filed by Wright Medical Group, Inc., in support of its Motion to Dismiss, it states that Wright Medical Group, Inc., is the parent company of Wright Medical Technology, Inc.  (Doc. 6-1, ¶ 9)  It cannot be reasonably disputed that Wright Medical Technology, Inc., is actively doing business in Arkansas.  Wright Medical Technology, Inc., is registered to do business in the State of Arkansas with the Arkansas Secretary of State.  (Exh. 1)  In that registration Wright Medical Group, Inc., lists its foreign address as 1023 Cherry Road, Memphis, TN 38117, the same address as Wright Medical Group, Inc.  The Arkansas Secretary of State registration for Wright Medical Technology, Inc., also lists Robert J. Palmisano, President, James A. Lightman, Secretary, and W. Dean Morgan, Vice-President.

Wright Medical Group, Inc., is not registered with the Arkansas Secretary of State. However, its registration with the Tennessee Secretary of State shows its principal place of business likewise to be 1023 Cherry Road, Memphis, TN 38117.  [Exh. 2]  Its Form 10-K/A (Amendment No. 1), filed with the United States Securities and Exchange Commission [SEC] for the fiscal year ended March 31, 2014, shows that same address. [Exh. 3] That Form 10-K/A also, discloses corporate officers include: Robert J. Palmisano, President and Chief Executive Officer; James A. Lightman, Secretary; and W. Dean Morgan, Vice President.  These are the same people who are disclosed as the President, Secretary and Vice-President of Wright Medical Technology, Inc.

As alleged in the plaintiffs' Complaint (Doc. 1, ¶s 46-49), it is known from documents filed in the year 2001 by Wright Medical Group, Inc., with the United States Securities and Exchange Commission [SEC], that it, Wright Medical Group, Inc., claimed

to the United States government, its investors, and the world that *it* was the designer,

manufacturer and distributor of the Profemur Modular Neck.  (Wright Medical Group, Inc.

Form 10-K for the year ended December 31, 2001. Exh. 4, Pgs. 2, 8, & 11.)  In Item 1. of

its 2001 Form 10-K, a section titled "Business," in the subsection titled "Overview," it

states:

> Wright Medical Group, Inc. (the "Company") is a global orthopaedic device
> company specializing in the design, manufacture and marketing of
> reconstructive joint devices and bio-orthopaedic materials.

(Exh. 4, Pg. 2; cited in Complaint, Doc. 1, ¶ 47)  In the very next subsection of its 2001

Form 10-K, titled "History" it states:

> The Company was incorporated on November 23, 1999 as a Delaware
> corporation (previously named Wright Acquisition Holdings, Inc.) and had
> no operations until an investment group led by Warburg, Pincus Equity
> Partners, L.P. ("Warburg") acquired majority ownership of the Company's
> predecessor, Wright Medical Technology, Inc.   ("Wright" or the
> "Predecessor Company") in December 1999.   This transaction, which
> represented a recapitalization of Wright and the inception of the Company
> in its present form, reduced the Company's debt and provided investment
> capital, thus allowing the Company to build on the Predecessor Company's
> respected brand name and strong relationships with orthopaedic surgeons
> developed during their fifty year history.

(Exh 4, Pg. 2.)  It is clear that as of its fiscal year ended December 31, 2001 Wright

Medical Group, Inc., had acquired a company named "Cremascoli" which Wright Medical

Group, Inc., considered it to be its "predecessor".

In the next paragraph of the "History" in the 2001 Form 10-K, Wright Medical

Group, Inc., having already stated that it, Wright Medical Group, Inc. is "the Company,"

goes on to state:

> Shortly thereafter, a new management team was put in place and on
> December 22, 1999, the Company acquired Cremascoli Ortho Group

3

> ("Cremascoli"), based in Toulon, France.  This acquisition extended <u>the</u> <u>Company's</u> product offerings, enhanced <u>the Company's</u> product development capabilities, and expanded <u>the Company's</u> European presence.  As a result of combining Cremascoli's strength in hip reconstruction with Wright's historical expertise in knee construction and bio-orthopaedic materials, <u>the Company</u> now offers orthopaedic surgeons a broad range of reconstructive joint devices and bio-orthopaedic materials in over 40 countries.  [Emphasis added]

(Exh 4, Pg. 2.)  So, as of the fiscal year ended December 31, 2001, **_Wright Medical Group, Inc._**, offered orthopaedic surgeons a broad range of reconstructive devices.

But Wright Medical Group, Inc.'s claims that connect it to the Profemur hip are even much more clear and direct.  In its 2001 Form 10-K on file with the SEC it states:

> Through the Company's acquisition of Cremascoli, several hip implant products designed for the European market, including the . . . PROFEMUR-TM-R Hip System, were acquired. . ..  The PROFEMUR-TM-R hip stem is a revision replacement implant with a patented modular femoral neck component. . ..

(Exh. 4, Pg. 8; cited in Complaint, Doc.1, ¶ 49)  So, in its SEC filings for the fiscal year ended December 31, 2001, Wright Medical Group, Inc., "the Company," is claiming **_it_** [Wright Medical Group, Inc.,] acquired the Profemur hip system.[1]

After presenting a chart of its products under development which lists the Profemur™ as a USA modular hip, Wright Medical Group, Inc., goes on to state in its 2001 Form 10-K on file with the SEC:

> Modular hip systems are growing in popularity, especially in revision replacement hip implant procedures.  The PROFEMUR-TM-R was designed by Cremascoli for the European market.  Although the Company is currently selling this product in the U.S., the Company is also developing a modified version and instrumentation to address the needs of U.S. surgeons.  The new system, the PROFEMUR-TM-USA Modular Hip will

---

[1]  It should be undisputed in this case that it was the Profemur R hip system that first introduced the Profemur hip devices to the United States.

> capitalize on the successful clinical history of the current PROFEMUR-TM-R product while incorporating new technology into the design.

(Exh. 4, Pg. 11)   Here, Wright Medical Group, Inc., "the Company," states that *it* is developing the Profemur modular hip and instrumentation for U.S. surgeons, which will incorporate new technology into the design.

Wright Medical Group, Inc., states that it, "the Company," acquired Cremascoli Ortho in 1999.  Cremascoli no longer exists.  But the Company that acquired Cremascoli and its Profemur product line does exist – Wright Medical Group, Inc.

While today Wright Medical Group, Inc., may claim to have no employees [Doc. 6-1, ¶ 8], and not be the designer and distributor of Profemur hip system [Doc. 6-1, ¶ 17], that was not its claim in 2001.[2]  In 2001 Wright Medical Group, Inc., "the Company," was self-proclaiming to be the successor of Cremascoli, and to (Exh. 4, Pg. 11)   As the designer of the product, Wright Medical Group, Inc., is subject to the long arm jurisdiction of this court.

It is also noteworthy that in a Complaint filed against both Wright Medical Technology, Inc. and Wright Medical Group, Inc., in the U.S. District Court, District of Arizona it was alleged:

> Defendants are subject to the Court's personal jurisdiction because Defendants have caused events to occur in this state out of which Plaintiffs' claims have arisen, so that they have sufficient minimum contacts with Arizona, such that the exercise of in personam jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

---

[2] Confidential Documents produced by Wright Medical in other prior Profemur modular neck fracture litigation, and presumably to be produced in discovery here, will place in dispute this statement that Wright Medical Group, Inc. has no employees.

*Weikert v. Wright Medical Technology, Inc.*, *and Wright Medical Group, Inc.*, Case 2:11-cv-02415, Document 14, Pg. 2-3, ¶ 8. (Exh. 5) In its Answer, Wright Medical Group, Inc., conceded *in personam* jurisdiction.

> To the extent the allegations contained in this paragraph state conclusions of law, no response is required. To the extent the allegations are factual in nature, Defendants do not challenge this Court's jurisdiction.

*Weikert*, Document 14, Pg. 3, Answer to ¶ 8. (Exh.5) In the following paragraph of that *Weikert* Complaint it was alleged:

> Defendants are corporations, thus they are deemed to reside in any judicial district in which they are subject to personal jurisdiction. 28 U.S.C. § 1391(c). As Defendants are subject to personal jurisdiction in Arizona, venue is proper in this Court. 28 U.S.C. § 1391(a)(1).

Document 14, Pg. 3, ¶ 9. (Exh. 5) In filing its Answer to that paragraph of the *Weikert* Complaint Wright Medical Group, Inc., again did not contest personal jurisdiction.

> To the extent the allegations contained in this paragraph state conclusions of law, no response is required and the same are deemed denied. Further answering, Defendants do not contest venue.

*Weikert*, Document 14, Pg. 3., Answer to ¶ 9 (Exh. 5).

As stated in the Declaration of Amy Reeves, filed by Wright Medical Group, Inc., in support of this motion, she states that Wright Medical Group, Inc. is a Delaware corporation having its principal place of business in Tennessee. (Doc. 6-1, ¶3) Therefore, one would think that litigating a Wright Medical Profemur modular neck fracture case against Wright Medical Group, Inc., would properly lie at least in the State where Wright Medical Group, Inc., has its principal place of business, Tennessee. However, efforts to litigate Wright Medical Profemur modular neck fracture cases, filed by numerous out-of-state plaintiffs, result in Wright Medical Group, Inc., filing motions to dismiss for *forum non*

*conveniens*, stating its preference that the litigation more properly belongs in the State where the plaintiff's injury occurred. Plaintiff's counsel here has personally experienced this effort by Wright Medical Group, Inc., to avoid litigating in Tennessee, where its headquarters are located.[3] (Exh. 6)

Finally, the Court should consider the statements that Wright Medical Group, Inc., continues to make in its filings with the United States Securities and Exchange Commission. Attached hereto as Exhibit 7 is a copy of the Form 10-Q filed by Wright Medical Group, Inc., with the SEC for the period ending March 31, 2014, dated April 30, 2014, signed by Robert J. Palmisano, Pres. and Chief Executive Officer, of Wright Medical Group, Inc.

In the "Notes to Condensed Consolidated Financial Statements" of that Form 10-Q is a section titled "Product Liability" which begins on page 18. In the paragraphs that follow is a very detailed disclosure and discussion of Profemur litigation, from the perspective of Wright Medical Group, Inc. In that discussion, Wright Medical Group, Inc., had every opportunity to say that litigation involved its subsidiary, Wright Medical Technology, Inc., [WMT] for which it ultimately had no legal liability or financial responsibility. Indeed, in several other places throughout this Form 10-Q Wright Medical Group, Inc., makes reference to its subsidiary, Wright Medical Technology, Inc., or WMT.

---

[3] See: Defendant's Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens*, *Pantuso v. Wright Medical Technology, Inc. and Wright Medical Group, Inc.*, Circuit Court of Shelby County, Tennessee, 13th Judicial District at Memphis, Case No. CT-001552-14. Plaintiffs prevailed on that issue in *Pantuso*, successfully resisting Wright Medical's intermediate appeal, and its petition to have the question certified to the Tennessee Supreme Court.

(See Exh. 7, Pgs. 18, 20, 32 & 33)  Wright Medical Group, Inc. had every opportunity to

state that the Profemur hip system was a product designed, marketed and distributed by

its subsidiary, Wright Medical Technology, Inc., for which Wright Medical Group, Inc.,

ultimately is not liable.  But that is *not* what it says.

What Wright Medical Group, Inc., does say in this Form 10-Q is:

We have received claims for personal injury against us associated with
fractures of our PROFEMUR ® long titanium modular neck product
(PROFEMUR ® Claims).  The overall fracture rate for the product is low and
the fractures appear, at least in part, to relate to patient demographics.
Beginning in 2009, **_we began offering a cobalt-chrome version of our
PROFEMUR® modular neck_**,[4] which has greater strength characteristics
than the alternative titanium version.  Historically, we have reflected our
liability for these claims as part of our standard product liability accruals on
a case-by-case basis. However, during the quarter ended September 30,
2011, as a result of an increase in the number and monetary amount of
these claims, management estimated our liability to patients in North
America who have previously required a revision following a fracture of a
PROFEMUR® long titanium modular neck, or who may require a revision
in the future.  Management has estimated that this aggregate liability ranges
from approximately $17 million to $28 million. Any claims associated with
this product outside of North America, or for any other products, will be
managed as part of our standard product liability accruals. [emphasis
added]

*Id.*, Pgs. 18-19.  It appears that Wright Medical Group, Inc., here, as it did in its 2001 Form

10-K filing with the SEC, is claiming the Profemur product to be its own.

The detail that follows in this 10-Q is also significant as elsewhere disclosed in this

10-Q that in this first quarter of 2014, Wright Medical Group, Inc., sold its "OrthoRecon

operating segment," the manufacture of its hip and knee products, and all of its assets, to

a Cayman Island corporation named Microport, for $285 million, paid in cash.  (*Id.*, Pg.

---

[4]  The Profemur cobalt-chrome Profemur® modular neck is the specific product at issue in this
case.

10)  However, Wright Medical Group, Inc., does not state that the $285 million cash is the property of its subsidiary, Wright Medical Technology, Inc.  Instead, this 10-Q discloses, "As a result of the transaction, *we* recognized approximately $24.3 million as the gain on disposal of the OrthoRecon business . . .."  (*Id.*, Pg. 10)

This Form 10-Q goes on to state, "Certain liabilities associated with the OrthoRecon business, including product liability claims associated with hip and knee products sold prior to the closing, were not assumed by MicroPort."  (*Id.*, Pg. 11)  Plaintiff here certainly questions whether Wright Medical Group, Inc., is now leaving its subsidiary, Wright Medical Technology, Inc., with the inability to satisfy any judgments which may be rendered against it related to the defective design of this product, which it has now sold to a Cayman Island corporation.

Because no discovery has yet taken place on this issue, plaintiff here does not yet have the definitive evidence they will seek in this litigation regarding this transaction.  But it certainly is suspicious that Wright Medical Group, Inc., sold for $285 million, paid in cash, the assets of the subsidiary that it claims in the instant motion was the manufacturer and distributor of this product, but then claims *it* received the financial benefit of that sale. If Wright Medical Group, Inc. "raided" the coffers of Wright Medical Technology, Inc., of the $285 million in cash realized in the sale of the Wright Medical Technology, Inc. Profemur hip product business, that evidence would pierce the corporate veil of Wright Medical Group, Inc.  If Wright Medical Group, Inc., is not subject to jurisdiction because of its self-proclaimed ownership of the Profemur hip system alone, the piercing of the

corporate veil renders the conduct of Wright Medical Technology, Inc., in Arkansas the conduct of Wright Medical Group, Inc.

### Personal Jurisdiction

Wright Medical Group, Inc. has not claimed insufficiency of service of process.  At this stage of the litigation, with no jurisdictional focused discovery having taken place, plaintiff has no testimonial evidence to counter the Declaration of Ms. Reeves.  But the Profemur hip products Wright Medical Group, Inc., acquired when it purchased Cremascoli in 1999, are being distributed and sold in the State of Arkansas, which in fact occurred here.  Wright Medical Technology, Inc., is doing that for Wright Medical Group, Inc.  The traditional notions of fair play and substantial justice are not violated by the designer of this product answering in a Court in Arkansas to a plaintiff who was injured by this allegedly defectively designed product that was sold to him and implanted in his body in the State of Arkansas.

The Arkansas state law governing personal jurisdiction is codified.

### § 16-4-101. Personal jurisdiction of Arkansas courts

A. **Definition of "Person".** As used in this section, "person" includes an individual or his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of this state and whether or not organized under the laws of this state.

B. **Personal Jurisdiction.** The courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution.

C. **Service.** When the exercise of personal jurisdiction is authorized by this section, service may be made either within or outside this state.

D. **Inconvenient Forum.** When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just.

Due process attending to personal jurisdiction is well defined in the case law.

Due process requires that a court may exercise personal jurisdiction over a nonresident so long as there are "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154 (1945) (*quoting Milliken v. Meyer,*311 U.S. 457, 463, 61 S.Ct. 339 (1940)). The conduct of the nonresident defendant must establish a connection with the forum state "such that he should reasonably anticipate being haled into court there. "*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 287, 100 S.Ct. 559, 562 (1980). The United States Supreme Court also outlined two types of personal jurisdiction: specific and general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-15, 104 S.Ct. 1868 (1984)." "Specific jurisdiction can only be found if the controversy is 'related to' or 'arises out of' the defendant's contacts with the forum state. General jurisdiction exists where the contacts between the defendant and the forum state are 'continuous and systematic' even if there is no relationship between the contacts and the cause of action." *Johnson v. Woodcock,* ___ F.3d ___, 2006 WL 250245 at *2 (8th Cir. February 03, 2006) (*quoting Helicopteros,* 466 U.S. at 415, 104 S.Ct. 1868).

The Eighth Circuit has instructed courts to weigh five factors in a personal jurisdiction inquiry: "(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties." *Dever,* 380 F.3d at 1073-74 (*quoting Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996)).

*Barnett v. Kohler*, Case No. 4:05-CV-1328 GTE. (W.D. Ark. Mar. 3, 2006)

Plaintiff contends that Wright Medical Group, Inc., is subject to personal jurisdiction, both specific and general, in Arkansas because it, Wright Medical Group, Inc., by its own published statements, admits that it was the designer of this product, AND

because Wright Medical Technology Inc., acted merely as the alter ego of Wright Medical Group, Inc.

## Alter Ego and Piercing the Corporate Veil

Because Wright Medical Group, Inc., has sold the assets of its subsidiary, Wright Medical Technology, Inc., for $285 million, the very assets that created the product in issue, and Wright Medical Group, Inc., has taken that money as its own, it has left Wright Medical Technology, Inc., undercapitalized.  To dismiss Wright Medical Group, Inc., at this stage of the litigation would be an injustice to the plaintiff.

Arkansas law holds that, "The conditions under which the corporate entity may be disregarded or looked upon as the alter ego of the principal stockholder vary according to the circumstances of each case.  The doctrine is founded in equity and is applied only when the facts warrant its application to prevent an injustice."  *Humphries v. Bray,* 271 Ark. 962, 966 611 S.W.2d 791, 793 (1981), citing *Aetna Cas. & Sur. Co. v. Stover*, 327 F.2d 288 (Cir. 1964).  Here the facts and equity so justify.

An article published in 2011 by the University of Arkansas School of Law, authored by Carol R. Goforth, *Clayton N. Little Professor*, contains a pertinent discussion of this subject.

> The author of an earlier treatise listed these eleven factors as being the most important in determining whether, in the context of subsidiary corporations, the parent had improperly dominated the subsidiary so as to justify piercing: (1) the parent corporation owned all or substantially all of the subsidiary's stock; (2) the parent and subsidiary had common directors or officers; (3) the parent financed the operations of subsidiary; (4) the parent caused the subsidiary to have been incorporated; (5) the subsidiary was grossly inadequately capitalized; (6) the parent paid the salaries, expenses and losses of the subsidiary; (7) the subsidiary's assets came solely from the parent, and the subsidiary conducted business only with the

parent; (8) the parent's records referred to the subsidiary as a department or division of the parent, and the parent's records reflected the subsidiary's business as its own; (9) the parent used the property of the subsidiary as its own; (10) the directors or executives of the subsidiary acted on behalf of the parent rather than independently in the interest of the subsidiary, and (11) corporate formalities for the subsidiary were not observed. The author of that treatise also suggested that it was necessary to show some sort of impropriety in order to justify piercing, and listed these seven possibilities as bases for demonstrating such wrong-doing: (1) actual fraud; (2) violation of a statute; (3) stripping the subsidiary of its assets; (4) misrepresentation; (5) estoppel; (6) torts; or (7) other cases of wrong or injustice. [citations omitted]

*A Review of Piercing the Veil Cases in Arkansas*, Carol R. Goforth, Arkansas Law Notes 2011, pp 17-28.  Many of the eleven factors important are present here.  Furthermore, it appears from the SEC filings of Wright Medical Group that is has stripped the subsidiary of the assets it had acquired in the sale of its hip and knee division.

On the face of allegations of plaintiff's Complaint here, which at this stage of the proceeding should be accepted as true, several of these requirements are met.  If the corporate veil is pierced, and Wright Medical Technology, Inc., was merely the alter ego of Wright Medical Group, Inc., then Wright Medical Group, Inc., is subject to long arm jurisdiction in Arkansas, and subject to personal jurisdiction in this state, and in this court.

Defendant Wright Medical Group, Inc., is a corporation.  Thus it is deemed to reside in any judicial district in which it is subject to personal jurisdiction.  28 U.S.C. § 1391(c).  As defendant Wright Medical Group, Inc., is subject to jurisdiction in Arkansas, venue is proper in this District Court.  28 U.S.C. § 1391(a)(1).

Respectfully submitted this 14th day of March 2017.

/s/ George E. McLaughlin
George E. McLaughlin
Colorado Bar 16364
Warshauer-McLaughlin Law Group, P.C.
1890 Gaylord Street
Denver, CO 80206-1211
Telephone: 720-420-9800
Facsimile: 303-322-3423
Email: GEM@w-mlawgroup.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ George E. McLaughlin
George E. McLaughlin